UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

MINDY KAHLE,                                          CIV. 04-5024-KES

              Plaintiff,

       vs.                                      **BRIEF IN SUPPORT OF PLAINTIFF'S
                                                      MOTIONS IN LIMINE**

JERMAINE LEONARD and
DEPUTY TIM MALONE,

              Defendants.

————————————

       Plaintiff Mindy Kahle, by and through her undersigned attorneys of record, prior to the voir dire examination of the jury panel, and out of the presence and hearing of its members, submits her Brief in Support of Plaintiff's Motions in Limine and respectfully moves the Court to instruct the attorneys in this action not to mention, inquire about, argue, create any inference, or make any statements or reference or read any deposition or other papers concerning any of the subject matter set forth below while within the hearing of the jury or any prospective member thereof; and, to further require the attorneys to instruct all persons appearing as witnesses during the trial not to mention, create any inference, or make any statement or reference concerning such subject matter while within the hearing of the jury or any member of the panel.

       Kahle also moves this Court for its Order allowing Kahle to introduce evidence set forth below the issues Kahle is seeking to exclude.

**<u>Evidence Defendants Should Not Present</u>**

## 1.    Kahle's criminal record, charges, and prior bad acts.

The Kahle has reason to believe that the Defendants will attempt to introduce evidence regarding Kahle's criminal record, charges, prior bad acts, and specific details regarding crimes with which she has been charged or convicted.  Kahle is currently incarcerated at the South Dakota Women's Penitentiary serving a sentence for first degree robbery and two counts of aggravated assault.  Kahle also has a conviction of third degree misdemeanor theft.  There has also been testimony that Kahle had prior charges related to the sale, use, and transportation of drugs.  Kahle asserts that the same is not relevant and admission of such evidence does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Federal Rule of Evidence 609 permits impeachment of a witness by conviction of a crime punishable by imprisonment in excess of one year or if the crime involved dishonesty or false statement by the witness.  The Eighth Circuit Court of Appeals has explained that "where the prior conviction evidence does not concern *crimen falsi* but rather other criminal acts where dishonesty is not an element, the trial court must take particular care to balance the probative value of the evidence against its prejudicial effect."  *Jones v. Collier*, 762 F.2d 71, 73 (8th Cir. 1985) (citing Federal Rules of Evidence 403 and 609(a)(1); also *Czajka v. Hickman,* 703 F.2d 317 (8th Cir.1983)).  Rule 403 provides that

2

provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The fact Kahle was convicted of robbery and aggravated assault is completely irrelevant.  The only purpose for telling the jury what crimes Kahle was convicted of would be to try and unfairly prejudice Kahle and to create the inference Kahle is a violent person.  Even if convictions of this nature were probative of violent tendencies that fact is irrelevant in this case because it is not being argued that Leonard sexually assaulted Kahle, or that Malone failed to supervise and protect Kahle, because the Defendants thought she was a violent person.  The probative value of  Kahle's robbery and aggravated assault convictions, and other charges, is substantially outweighed by the danger of unfair prejudice and reference to the specific nature of the crimes should be excluded.

In addition, none of Kahle's convictions or charges involve dishonest or false statements.  *See Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004) (concluding that "the district court erred by holding that robbery is a crime involving dishonesty that is automatically admissible under Rule 609(a)(2)"); *United States v. Wiman*, 77 F.3d 981, 986 (7th Cir. 1996) (affirming district court's decision to deny admission of misdemeanor theft conviction); *Medrano v. City of Los Angeles*, 973 F.2d 1499, 1507 (9th Cir. 1992) (finding that district

3

court erred when it allowed defendants to impeach witness with misdemeanor convictions for drug use and shoplifting because the crimes did not involve false statements or dishonest).  Accordingly, Kahle respectfully requests this Court to prohibit introduction of any testimony or evidence in reference to Kahle's criminal convictions.

In the alternative, if the Court determines that Kahle's felony convictions are admissible, Kahle asks that the Court limit examination to the title of the felony for which Kahle was convicted and the date of conviction.  *See United States v. Roenigk*, 810 F.2d 809, 814-15 (8th Cir. 1987) ("Excessive exploration by the government, of the circumstances and details of prior criminal conduct, may be so prejudicial as to amount to plain error.").  Allowing the Defendants to question Kahle any further would unduly prejudice Kahle and not be relevant to any issues before the jury.

### 2.    Kahle's current incarceration.

It is anticipated that Defendants will attempt to present evidence regarding details of Kahle's current incarceration i.e. the length of the sentence that Kahle received and the remaining time Kahle has left to serve on her sentence.  Kahle asserts that any reference to the length of Kahle's sentence and any evidence regarding Kahle's present incarceration would be irrelevant, would be unfairly prejudicial and would serve no purpose for the matters at issue in the current litigation.

"Evidence of current incarceration is highly prejudicial, and therefore

4

courts should not be quick to admit such evidence." *Gora v. Costa*, 971 F. 2d 1325, 1331 (7th Cir. 1992). The court in *Gora* explained that evidence of current incarceration is particularly prejudicial in civil rights cases because those actions "serve an essential deterrent function in hopes of protecting citizens' vital rights [and] often pit unsympathetic plaintiffs-criminals, or members of the criminal class against the guardians of the community's safety" *Id.* (quotations omitted). The Seventh Circuit Court of Appeals also aptly stated in an earlier case: "[T]he opposing party may not harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case." *Hernandez v. Cepeda*, 860 F.2d 260, 264 (7th Cir. 1988) (quotations and citation omitted). Accordingly, the probative value of testimony concerning the details surrounding Kahle's convictions is slight in comparison to its prejudicial effect, and such evidence should be excluded.

### 3.     Kahle's former occupation as an exotic dancer.

It is anticipated that Defendants will attempt to present evidence in reference to Kahle's previous occupation as an exotic dancer. Kahle asserts that any such reference that Kahle was an exotic dancer prior to her incarceration serves no probative value and is completely irrelevant and inadmissible pursuant to Rule 402. Kahle further submits that such evidence would serve no other purpose than an attempt by Defendants to attack Kahle's character and to

5

character and to create a negative bias and prejudice against Kahle, and accordingly, is not admissible pursuant to Rule 404.

In *Skultin v. Bushnell*, 82 F.Supp.2d 1258 (D. Utah 2000), several females commenced a § 1983 action against Utah Highway Control Officer Lance Bushnell after he illegally detained them after a vehicle stop.  *Id.* at 1258.  The plaintiffs filed a motion in limine to exclude evidence that two plaintiffs worked in the adult film industry and one plaintiff had worked as a prostitute.  *Id.*  The district court found that the plaintiffs' professional history was "irrelevant to any issue of liability for the alleged violation of plaintiffs' civil rights."  *Id.*  It also relied on the fact the plaintiffs were not making a claim that their professional activities or employment was affected by the officer's conduct.  *Id.* at 1259.  The court further stated that "evidence of plaintiffs' adult sexual activities is in the nature of circumstantial character evidence which would generally be inadmissible in a civil case on liability or damages, except in very special situations where such activities may be in issue."  *Id.* at 1260.


The *Skultin* case supports exclusion in the present matter because Kahle is not claiming her employment was affected by the Defendants' conduct.  In the event the same is deemed relevant by the Court, Kahle submits that any probative value is substantially outweighed by the danger of unfair prejudice and confusion of issues and should be excluded pursuant to Rule 403.

**4.     Kahle's prior alcohol and drug use.**

6

It is anticipated that Defendants will attempt to introduce evidence regarding Kahle's prior alcohol and drug use.  Any such evidence would be irrelevant pursuant to Rule 402 of the Federal Rules of Evidence, and if deemed relevant by the Court, it would be prohibited pursuant to Rules 403 and 404(b) of the Federal Rules of Evidence.

Kahle was a pretrial detainee at the Pennington County Jail at the time she was sexually assaulted giving rise to the current litigation.  There is no evidence to suggest she was under the influence of alcohol or drugs during her incarceration at the Pennington County Jail, and particularly, during the time that she was sexually assaulted by the Defendant Leonard.  As such, any evidence or testimony regarding Kahle's past usage of alcohol and drugs would have no relevance to the subject matter of the instant litigation and any reference thereto would simply be offered by Defendants in an attempt to portray Kahle negatively to the jurors so as to create prejudice and bias against the Kahle.  *See Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703, 707-708 (8th Cir. 1984) ("The district court did not abuse its discretion in holding that illegal drug use or transactions, without more, do not show untruthfulness" (citation and quotations omitted)); *see also Thomas v. Sheahan*, 514 F.Supp.2d 1083, 1088 (N.D. Ill. Sept. 21, 2007) (granting plaintiff special administrator's motion in limine regarding decedent's drug use because it was not relevant to the issue of whether he received inadequate medical care during incarceration). Further, any such reference would also be substantially more prejudicial to the Kahle than

7

than probative of any matters giving rise to the current litigation.

### 5.    Kahle's past sexual behavior or alleged sexual predisposition.

Kahle moves this Court to prohibit any reference to Kahle's past sexual behavior or alleged sexual predisposition pursuant to Fed. R. Evid. 412.  Kahle also asks this Court to exclude any evidence concerning past instances where Kahle was physically, sexually, or mentally abused by others, as well as her familial status .

The commentary to Rule 412 explains that its purpose is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment, and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Rule 412(b)(2) allows for the admission of evidence regarding sexual activity in civil cases only "if it is otherwise admissible under the Rules of Evidence and its probative value substantially outweighs the danger of harm to any victim and of the unfair prejudice to any party." *Excel Corp. v. Bosley*, 165 F.3d 635, 640-41 (8th Cir. 1999).  The *Excel* court held that the sexual activity of the victim in a Title VII action was inadmissible pursuant to Rule 412 despite the fact that hostile work environment sexual harassment was a matter at issue in *Excel*, involving another employee of the company who was plaintiff's ex-husband. Accordingly, any such evidence regarding Kahle's past sexual activity, sexual abuse and physical abuse is irrelevant and inadmissible pursuant to Rule 412 and 403.

8

Examples of the evidence Kahle is asking the Court to exclude is listed below:

      a.      Physical and emotional abuse by father.

As far back as Kahle can remember (age 5) Kahle was physically and emotionally abused by her father.  His abuse against Kahle continued until she was approximately 14 years old.  Kahle's father would choke, strike, and physically injure Kahle to the point of causing bruises, lumps, and welts.  Kahle also witnessed her father physically abuse her sister, brother, and mother.

      b.      Sexual molestation by Harry Albright.

Kahle was molested from the age of seven to ten by an older man named Harry Albright that lived down the street in Belle Plaine, Minnesota.  Albright would invite Kahle into his house and listen to her problems, at times offering her candy and ice cream.  Albright would then sexually molest Kahle in various forms.

Albright's molestation of Kahle was finally exposed when Kahle brought a friend over to his house.  They were playing hide and go seek when Albright touched Kahle's friend inappropriately.  She in turn questioned Kahle regarding how he molested Kahle and made Kahle tell her parents what was occurring.  Albright was criminally investigated and committed suicide thereafter.

      c.      Sexual assaults by Marcus Leith.

In early 1998 Kahle began dating Marcus Leith.  Shortly before her 18th birthday she and Marcus left a party and were staying at Kahle's father's house. Marcus was intoxicated and a fight ensued.  Marcus then wanted to have intercourse with Kahle but she refused.  Marcus continued his advances and Kahle was unable to fight him off.  Kahle laid still and cried while Marcus had forced intercourse with her.  When Kahle asked Marcus to leave, and that she never wanted to see him again, he claimed that he did not know she was crying.

In 2002 Marcus was intoxicated and having intercourse with Kahle when he started striking her.  Marcus claimed that he blacked out and did not remember the event.

      d.     Flashing.

Counsel for Defendants questioned Kahle regarding an allegation that there was one incident when she lifted up her shirt or "flashed" male inmates in cell block four, while housed at the Pennington County Jail.  Kahle denies that she flashed anybody.  Further, Sherriff Don Holloway testified that there was no such claim that Kahle flashed anybody.  (Holloway Dep. 121:14-15.)  Admission of testimony on this allegation will not assist the jury, will be highly prejudicial to Kahle, and is hearsay.

      e.     Familial status.

On September 30, 1999, Kahle gave birth to her daughter Marcades.  The

10

The father of the child is Marcus Leith.  Kahle and Marcus were not married at the time.

Kahle moves this Court to prohibit any reference to Kahle's familial status, specifically that she has a daughter, that her daughter was born out-of-wedlock, or the current custodial status of her daughter.  Kahle submits that such evidence would be irrelevant, a waste of time, and would serve no legitimate purpose in having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  This would cause Kahle's past sexual behavior to come in indirectly, contrary to Rule 412, causing unfair prejudice. *United States v. One Feather*, 702 F.2d 736, 739 (8th Cir. 1983) (affirming district court's decision to exclude cross examination that would reveal the victim had an illegitimate child).

**6.    Videotape interview of Mindy Kahle.**

It is anticipated that Defendants will attempt to introduce evidence concerning a videotape and transcript of Kahle which were created during an interview on January 2, 2003.  (Ex. A: Kahle Video Interview, 1/02/03.)  The questions and statements on that video are unrelated to the sexual assaults which are the subject of this lawsuit.  The purpose of that interview was to find out if Kahle was aware of any information that some employees of the jail were violating jail rules.

While incarcerated, Kahle sent letters to her bother Tory Kahle, who was

11

incarcerated in another correctional facility.  The letters were intercepted and forwarded to Sheriff Don Holloway.  The letters noted that the maintenance man at the jail brought her "shit" and that some correctional officers would give her "info."

In her interview Kahle explained that she jokingly asked a maintenance man at the jail if she could have a piece of candy he had.  The maintenance man gave her a piece of candy, then later slid a piece of candy under her door, and also gave her a piece of candy when he had to fix the sink in her cell.  Those were the only three instances when the maintenance man gave Kahle anything. Kahle explained that the information the correctional officers told Kahle was about what other inmates were put in lock down.

Kahle also told the investigator on numerous occasions that she wanted to talk to her attorneys before she said anything else.  The officer was unrelenting and continued to questions Kahle.  If the jury was allowed to see these exchanges it would cause Kahle undue prejudice and confuse and mislead the jury.  This information will not assist the jury in determining whether Leonard had nonconsensual sexual contact with Kahle.  Nor will this information assist the jury in determining whether Kahle failed to protect her from Leonard's sexual assaults.

**7.    Letters from Kahle to her brother Tory Kahle.**

It is anticipated that Defendants will attempt to introduce evidence concerning the letters Kahle sent her brother.  (Ex. B: Kahle Letter to Tory

12

Kahle.)  The majority of the information in those letters is completely irrelevant. However, there is also a substantial amount of information that references other issues Kahle has moved to exclude, including: past relationships; present boyfriends; physical abuse by her father; sexual abuse by others; circumstances concerning Kahle's underlying convictions and sentence.

If the jury was allowed to see these letters it would cause Kahle undue prejudice and confuse and mislead the jury.  This information will not assist the jury in determining whether Leonard had nonconsensual sexual contact with Kahle.  Nor will this information assist the jury in determining whether Kahle failed to protect her from Leonard's sexual assaults.

**8.      Details concerning Kahle's brother Tory Kahle.**

It is anticipated that Defendants will attempt to introduce evidence regarding Kahle's brother, Tory Kahle.  Such evidence would include reference to the fact he may have used drugs, was incarcerated at the same time as Kahle, and that he was also abused by Kahle's father.  Tory Kahle is not going to testify in this matter and the introduction of such information would be irrelevant, prejudicial, and only serve to embarrass or humiliate Kahle.

**9.      When Kahle hired an attorney and nature of attorneys' fees and compensation.**

It is anticipated that Defendants will attempt to introduce evidence regarding the date when Kahle retained an attorney to pursue and present her claims before this Court and the amount, and manner, of her attorneys' compensation.  Testimony on this matter will not aid the jury in its

13

determination of the issues in this case and would therefore be irrelevant and inadmissible.  Fed. R. Evid. 402.

## Evidence Plaintiff Should Be Allowed To Present

### 10.    Videotaped interviews of Jermaine Leonard and Tim Malone.

Kahle asks this Court for its Order permitting her to play the videotaped interviews of Jermaine Leonard and Tim Malone.  (Ex. C: Jermaine Leonard Video, 12/16/02 and Ex. D: Tim Malone Video, 12/16/02.)  These videotaped interviews were conducted on December 16, 2002, two days after Kahle was assaulted.  The videos are relevant pursuant to Rules 401 and 402 because questions presented by Investigator Brian Mueller are directly related to the events that transpired the night of the assault.  Further, the videos are of critical importance because the jury can actually see the mannerisms and hear the voices of Leonard and Malone.

In *Estate of Moreland v. Dieter*, the family members of a county jail detainee who died while in custody brought a § 1983 action against the sheriff and former deputies alleging excessive force.  395 F.3d 747, 751 (7th Cir. 2005). During the county's investigation it conducted videotaped interviews of the defendant deputies.  *Id.* at 753.  The district court allowed the videos to be played for the jury, at times taking live testimony in between.  *Id.* at 753.  The videos recounted the deputies version of events leading up to the detainee's death.  The Seventh Circuit Court of Appeals affirmed the district court's admission of the videos stating that "the tapes are highly probative of their

14

actions, state of mind, and credibility." *Id.* at 755; *see also* DiCarlo v. Keller Ladders, Inc., 211 F.3d 465, 467-68 (8th Cir. 2000) (affirming district court's decision to admit videotaped statement of plaintiff showing where accident occurred); McCrary-El v. Shaw, 992 F.2d 809, 811 (8th Cir. 1993) (affirming district court's decision to admit videotape showing inmate in cell movement).

The videotaped interviews of Malone and Leonard will greatly assist the jury in making an accurate determination of Malone and Leonard's actions, state of mind, and credibility.  As an example, in the beginning of Leonard's videotaped interview he denies having sexual contact with Kahle, but later in the interview he admits he had sexual contact but it was consensual.  Leonard then stated he only went in Kahle's cell twice, but later he admitted he went in three times.  Leonard also said he did not perform oral sex on Kahle, then he said licked around her vagina, then he said he licked across her vagina.

Malone stated in his interview that he was not aware of anything inappropriate happening on the night he was supervising Leonard, but later stated Officer Michelle Orth told him that an inmate claimed she was sexually assaulted.  Malone also stated the only time he saw Leonard by Kahle's cell was when Leonard *returned* a drawing to Kahle.  However, the night before Malone stated to Officer Orth that the only time he saw Leonard go to Kahle's cell was when he *took* the drawing from Kahle.  Malone's attempt to explain this inconsistency is on the videotape.

**CONCLUSION**

15

The injection of the matters made the subject of Plaintiff's Motions in Limine into the trial of this action by any party, attorney, or witness would cause irreparable prejudice which no instruction by the Court to the jury would cure. Should any of such matters be brought to the attention of the jury, either directly or indirectly, Plaintiff Mindy Kahle would be entitled to an order granting a mistrial of the action.  Therefore, Plaintiff Kahle asks that the Court grant her Motions in Limine and exclude the foregoing testimony and information.  Kahle further submits that the information she seeks to introduce is relevant and the jury must be allowed to consider this evidence in making its determinations.


Dated this  28th  day of January, 2008.

BEARDSLEY, JENSEN & VON WALD,
Prof. L.L.C.


By:  /s/ Brad J. Lee
   Steven C. Beardsley
   Brad J. Lee
   4200 Beach Drive, Suite 3
   P.O. Box 9579
   Rapid City, SD  57709
   Telephone:  (605) 721-2800
   Facsimile:  (605) 721-2801
   Email:  sbeards@blackhillslaw.com
   blee@blackhillslaw.com
   *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the  28th  day of January, 2008, I sent to:

Mr. James S. Nelson

Gunderson, Palmer, Goodsell &            Mr. Thomas E. Brady
Nelson                                    Brady Pluimer
P.O. Box 8045                             135 Colorado Boulevard
Rapid City, SD  57709-8045                Spearfish, SD  57783

by electronic filing a true and correct copy of **Brief in Support of Plaintiff's Motions in Limine** relative to the above-entitled matter.

/s/ Brad J. Lee

Brad J. Lee

17